We'll turn to the next case on our calendar, Nicole Zachman versus Hudson Valley Federal Credit Union. Thank you. Okay, I thought he said something else when he turned to the microphone. Good morning, counsel. You can take off your mask. May it please the court, James Brannett for Hudson Valley Federal Credit Union. Your Honors, our basic argument in this case is very simple. Ms. Zachman entered into the Internet Banking Agreement. That banking agreement, as allowed under New York law, incorporated by reference, the two account agreements. Those two account agreements included arbitration provisions at the time she entered into the Internet Banking Agreement. Consequently, she agreed not only to the strict confines of the Internet Banking Agreement, but also to the two account agreements. Counsel, your witness testified at trial that she was never sent a hard copy of this agreement, including arbitration, that they never gave her any notice about it, that there was no way they called it to her attention, and it was just on the website, which she was not obligated to look at in order to do her banking, was she? She was not obligated to look at the website. And it was never called to her attention? It was not to her attention when she voluntarily, Ms. Zachman, by the way, it was not our witness that said she never saw it. It was Ms. Zachman that testified. But she worked for you, wasn't it someone she worked for, worked for you, for Hudson Valley? I'll guess her name. Yeah, there was a different opponent that we presented as 30B6, Keenan, I believe. But you had, there was a witness from Hudson Valley who said that it was never mailed to her, it was never called to her attention, and on the website it wasn't in bold or any way to give her notice. Isn't that correct? Our position is not that Ms. Zachman entered directly into the account agreements without reference to the Internet Banking Agreement. The key point here, though, is that it's undisputed that she entered into the Internet Banking Agreement and that the terms of the Internet Banking Agreement When she first signed up in 2010? No, in 2019, when we first offered But she was a customer from way before, right? From 2012. So in 2019, she went on to our website because we were offering, this is the offer, the offer acceptance consideration, et cetera, this is our offer, we're offering you now Internet banking. To do that, to take advantage of that offer, to accept it, the testimony is that she had to go on to our website, she had to click through to the agreement itself, she had to scroll through the agreement, and at the bottom of it was an I agree to the above terms and conditions. Was it called to her attention that included in there was an arbitration agreement? Was it called to her attention in any way? Was it in bold? Was there a please notice this or anything like that? Or was it just stuck at the end so that anyone would miss it? It was one of the terms of the Internet banking agreement that, by the way, Ms. Zackman, when you are signing, when you are clicking the I accept button, you are also accepting the account agreement and disclosures. And then there was a link to that, or at the very least there was a URL address that she could go to and find out. Did she go to the link? She denies that she went to the link, but that's not necessary that she actually do that. That she actually clicked the link. But how did she ever get notice about the arbitration agreement? That's all I'm asking you. Your Honor, let me take it one step at a time, because it's important that we first determine what the terms of the Internet banking agreement are, that she entered into that contract. There's no dispute, no real dispute about that. So she is presumed then to have read the entire Internet banking agreement. Do you think that's true? Is that what we presume? Do we really presume that people read everything? Yeah, the law presumes that, Your Honor. Contracts are meaningless. If somebody can come in after signing something and manifesting their acceptance, contracts would be meaningless if they could then come back and say, I didn't read that, so I never agreed to it. That's why the law imposes a presumption. Our case law is about context and design, isn't it? Our case law dealing with these kinds of arrangements that we've gone through so far, the Uber case and the Subway sandwich case and the Amazon case, all look at, all turn on the context and the design of the links that are available and how well they're set out. For example, in the Uber case, it's a link that you click onto, and the court found that people agreed to a pretty substantial agreement by not clicking on the link. They chose not to click on the link when they were given the opportunity. So did you present to the court the design and context of that agreement, what she actually saw on the screen?  We presented the affidavit of Mark Timmerman who laid out what she did to accept the Internet banking agreement. But did you show the court in a document what the screen looked like? Whoever printed out the exhibit that was attached to the Timmerman affidavit, like myself, doesn't know how to take a screenshot of what she saw on the computer. But the importance here is that the contents were there. We did present evidence of the contents. And again, she's presumed to have read those. She's presumed to have read that when I accept this agreement, I'm not just accepting the Internet banking agreement, but I'm also accepting the account agreement. So it is true that in the Uber case, we said that as long as it's clear that someone's agreeing to the terms of service, you're agreeing to all of the terms. And I take it your position is it's clear that she agreed to the Internet banking agreement, right? Yeah, she agreed to the Internet banking agreement. But is it a step removed from Uber to say that when you agree to the Internet banking agreement, you're also agreeing to a whole separate agreement that's incorporated by reference? Yes, that is a next step. That was not an issue in the Uber case. But it is New York law that you can do that, we can do that. In the commercial consumer context or consumer context, we can incorporate by reference. What we're basically doing is we're clipping to the end of the Internet banking agreement, we're clipping to the end of that, the account agreement. Counsel, we also want notice. Do you admit that when you sent the Internet banking agreement on the hyperlink, that it was not bolded, underlined, or in a different color, the notice that she would have to arbitrate? I'm not admitting that, Your Honor. That's in the Mark Timmerman affidavit that it was in blue and it was underlined. But in the end, it doesn't matter because, again, by incorporating by reference a different document, we warned Ms. Zachman that by agreeing to the Internet banking agreement, she has to read not only that document but the other two documents that were incorporated by reference. Is there any question that the agreement to the Internet banking agreement was sufficiently conspicuous? Like, is there any argument that she didn't realize she was agreeing to the Internet banking agreement? Well, they've tried to argue that it requires conspicuousness. First of all, it's contrary to New York law. To be able to incorporate by reference, all you need to do is identify the additional document. No, I understand. I'm assuming you're right that the Internet banking agreement can incorporate the account agreements by reference. And I'm just asking, is there a question as to whether even the initial agreement to the Internet banking agreement was adequately conspicuous? The red light is on. May I answer your question, Your Honor? Yes, of course. There should not be under the law, but also factually, that paragraph, which we rely on, was as conspicuous as every other paragraph in that contract. They're all the same typeface, same size. There's nothing hidden about it. This isn't like the case they're relying on where there was a coupon that referred to a Web site that you then had to go look at to find out what the terms were. This is a document which specifically says you're agreeing not just to this Internet banking agreement, but also to these two account agreements. Therefore, she had inquiry notice that required her to go to those links, whether it was hyperlinked or not, cut and paste. All she had to do was cut and paste and go to those documents, read through them. The arbitration agreements were definitely conspicuous in the account agreements. Counsel, your time has expired, but you have served, save two minutes for rebuttal. We'll hear from Plaintiff Apelli. Good morning, Counsel. Good morning. May it please the Court, Sophia Gold on behalf of the Apelli. When Ms. Zachman opened her bank account in 2012, there was no arbitration provision or class action waiver. Hudson Valley added the arbitration provision and class action waiver in 2014. Did they send her a copy of it? No, they did not send a copy to any of their members. Now, initially, Hudson Valley moved to compel arbitration in the lower court on the basis that Ms. Zachman should have affirmatively gone on the website to search for the new agreement, and she should have known to look for it. We then took arbitration-related discovery, during which the credit union never mentioned this Internet banking agreement, never mentioned its existence. I took a 30B6 deposition of their corporate representative. I asked, what are the ways Ms. Zachman received notice? And they answered that we posted it to the website, and that was the only way that account holders like Ms. Zachman would have received notice. So they never mailed a copy of it to her? Never. On reply, the credit union argued for the first time the only argument that forms the basis of their appeal, which is that in October 2019, supposedly Ms. Zachman signed up for online banking, agreed to the Internet banking agreement, which supposedly incorporated the new account agreement by reference. Now, Judge Brochetti below rejected that argument, denied the motion to compel arbitration, and there are numerous reasons this court can affirm that opinion, but the simplest one is that there's insufficient evidence Ms. Zachman ever agreed to that Internet banking agreement to begin with. My colleague, Mr. Brannett, mentioned there's no real dispute that Ms. Zachman ever agreed to the Internet banking agreement, but that's just not true. Their entire argument, which again, we never had an opportunity to take discovery on because it was submitted on reply, is in paragraph six of the Timmerman affidavit, which says, in order to sign into the new online banking system for the first time, members must first click through and agree to the various HVCU disclosures, including the Internet banking disclosure and agreement. That's it. That's all we know about this entire process of how Ms. Zachman supposedly agreed to the Internet banking agreement, and it's basically a conclusory statement that just says Ms. Zachman agreed to Internet banking. But if that were enough, imagine if that had been the court's record in Uber or in the SquareTrade case, if we just had an affidavit that just said, consumers agreed to Uber's terms and conditions. Consumers agreed to SquareTrade's terms and conditions when they used the account. It doesn't tell us anything about how they agreed. We know nothing about the interface or the design. And as this court recognized in Meyer v. Uber, there are infinite ways to design a Web site. But she continued to use the services and online banking after they amended the account agreement, correct? That's true, Your Honor, though we would still dispute that she ever received any notice, just like in SquareTrade, just because a consumer chooses to use SquareTrade doesn't necessarily mean they agreed to their terms. Just because a consumer uses online banking and looks at her bank statements doesn't necessarily mean she's agreed to the Internet banking agreement. I'm sorry. So are you saying that it's possible that she kept using online banking without ever agreeing to the Internet banking agreement, or that the Internet banking agreement was not conspicuous enough? Both, Your Honor, because we have no idea how she was ever presented with the Internet banking agreement. So, for instance, if it was inconspicuous, if she was not given clear notice of the Internet banking agreement's existence, we would say she never agreed to it. That's the problem. I mean, it wasn't presented to the court in the context of like the way Uber was done. They had a screenshot. In most of the cases, there are screenshots, and that's where the context and design standard comes from. And you say this came in a reply only. And so I take it then that Judge Vercetti's determinations of that there just wasn't an adequate showing of that are to be measured in the context of, A, that reply affidavit, and the original submissions that they did in an attempt to compel arbitration. Absolutely. So we never had an opportunity to respond in the lower court, and there wasn't even oral argument there. The instruction on a motion to compel arbitration, as the court is aware, is to draw all reasonable inferences in favor of the nonmoving party. And here I would say that instruction should carry extra weight, given that we already went through the discovery process. They already had multiple opportunities to provide- Is this a requirement whenever anyone agrees to- whenever there's a motion to compel arbitration based on an Internet-based agreement, there's a requirement that the proponent of enforcing the agreement must submit graphical representations of the agreement? Is that the argument? That's essentially what our case law holds? Well, they certainly have the burden to show that an agreement exists. And how they meet that burden is up to them. But I would say that this conclusory affidavit submitted on reply that just says consumers agree, without providing any context for that, is insufficient in this case. Another fallacy to point out is they keep referencing a checkbox, that there was a checkbox, but we don't have any evidence that there was a checkbox for online banking. I think that comes from the text of the agreement itself, which references a checkbox. But just because an agreement references a checkbox doesn't actually prove that a checkbox, in fact, existed. They didn't put in any evidence that she signed or checked a box. No, there's no evidence that she ever checked a box. And as the court pointed out, it's very common to see that sort of evidence. It's very easy for them to put forward that evidence. And the fact that it's not there, the logical inference should be drawn in our favor that it didn't exist. Would it have made a difference in your argument if they had mailed the Internet agreement to Ms. Nachman at her home? I think so, Your Honor. I think if we knew that Mrs. Nachman received the Internet banking agreement, we would then have a fight about whether this incorporation by reference was legitimate or not and whether it was conspicuous or not. And whether it gave her actual notice. Exactly. But they didn't mail it to her. They admitted they never mailed anything to her. Correct. Correct. So your position is that they haven't met their burden to show that the Internet banking agreement itself was conspicuous enough, and so you don't even reach this question about whether the fact that it incorporates the account agreements was conspicuous enough. But can I just ask you, if it were conspicuous enough that she agreed to the Internet banking agreement, why would it not be the case that it can incorporate other agreements by reference? You know, in the Uber case, we said as long as it's clear you're agreeing to the terms of service, the terms of service can actually be pretty extensive even if you never saw them. So why would this case be different? I think Stark v. Square Trade answers that question, Your Honor, which says a party should not be bound by clauses printed on the reverse side of a contract unless it is established that they were properly called to his or her attention. This often turns on whether the contract terms were presented to the offeree in a clear and conspicuous way. So just because there is a contract and it's established that there's a contract doesn't mean that every term of that contract is enforceable under this state's law. Instead, the analysis is still whether the terms are clear and conspicuous. And when you're hiding very important terms, and here you definitely say this is an important term, and not only was it not bolded and it was not underlined and it was not in blue because that's the attachment to the Timmerman Affidavit shows those things to be true, even if someone clicked on it, there's no summary at the top that discusses any of the changes that are made to the account agreement. So there's nothing that indicates, by the way, in the five years since you've had your account, we've added a new arbitration provision and class action waiver. You should pay attention to this change. I take it your point, though, is that we don't need to get to the notice inquiry issue, which the court kind of got there, but the court made a first finding that there's no way that it could determine this. Exactly, Your Honor. And that's why, I mean, in all the cases that we've seen, Judge Menache's mentioned the Uber case, and I did too, I mean, they had screenshots. And so I take it, is it your view, then, that this is really a burden case and not a notice inquiry case, that they didn't get to the step of then interpreting what the implications were of the click because they never showed the context and design in which the click occurred? Yes, Your Honor. And I'm almost out of time, so I did want to briefly mention that another reason to affirm the district court's opinion would be the modification provision. It's undisputed that the credit union didn't follow its own modification provision here, and if they don't follow their own modification provision to make changes, then the provision itself is meaningless, and at least the Ninth Circuit has a case that's directly on point, the Barnett v. Cigna case, which counsels that the modification should not be enforced unless they follow their own process for doing so. Thank you, counsel. Mr. Barnett, you reserve two minutes for rebuttal. Thank you. First of all, this is not a modification. This was a new contract, so the terms regarding modifications don't even apply here. Second, regardless of whether there was conspicuous or not, or the judge's findings about conspicuity, the point here is that his ruling needs to be reversed because as you're talking about, Your Honor, this is a burden. If you're saying we didn't present enough to meet our burden as a matter of law that there was an agreement to arbitrate, as plaintiff's counsel admits in her brief at page 6, that just means there are genuine issues of material fact here. Did you tell the judge about what the terms and conditions were or the reply affidavit as opposed to your main affidavit seeking to compel arbitration? I'm sorry, Your Honor. Did the information that really described the modification and the reference to the other policies that one had to click to at the time of beginning to use internet banking, did that all come in your reply affidavit as opposed to your original application to compel arbitration? It did, Your Honor. Okay, fair enough. And there was no objection by the plaintiff to that in the trial court. The district court actually ruled on it and therefore considered it. We have many cases against each other. And when there has been similar situations, we have freely afforded them the ability to engage in additional discovery and final assertion. I wasn't drawing a conclusion. I just wanted to know if that was accurate. I understand. I just wanted to make it clear that it was not intended to be unfair to anybody. But here's the point is that we have no evidence has proved as a matter of law that there was no agreement to arbitrate. And consequently, the step is, this is, again, the standard is the same burden. Whose burden do you have the benefit of notice inquiry? But it's the burden on a motion for summary judgment. Yours. It's my burden to prove, yes. All right. But if after my proof is presented, there still remain issues of material fact, the answer is not to deny your motion outright, but to set it for evidentiary hearing. You're saying what you put forward was sufficient to establish that there was a question of material fact about the Internet banking agreement, even if it didn't establish as a matter of law that she had inquiry notice. Right? That's your argument you're making. Well, two things. The contents are undisputed. The verbiage, the language, that paragraph that says that by agreeing to this Internet banking agreement, you're also agreeing to the account agreements. That raises an inference that since she did use Internet banking, that she must have agreed to those terms. And that is in combination with Timmerman's affidavit, which says that's the only way she can get on to our Internet banking, is to agree to the Internet banking agreement. That's enough inference to show that she agreed to all of the terms of the Internet banking agreement, which incorporated, again, by reference, those two account agreements, which included arbitration. New York law specifically does not require us to mention that they include arbitration, the documents that are going to be incorporated by reference. But we have recent case law that says you are required to at least bring notice. No, Your Honor. That's when we're talking about directly entering into the account agreements, not when we're talking about an agreement that she definitely had to accept, which, again, clipped to the end. And basically we warned her, don't stop at the end of this particular document. You need to go on and read these other two documents as well. All we did was add pages to the document in the Internet banking agreement. But, counsel, the whole body of law on arbitration is that it's a contract that two parties agreed to affirmatively, that they know they're entering into a contract. And here that piece is missing. Your Honor, respectfully, it is not. It is in that paragraph and it is in the documents that she agreed to be bound by, the account agreements that she agreed to be bound by when she effectively signed the Internet banking agreement. Okay. Thank you. The last case on our calendar is on submission. So I will ask the clerk to adjourn court.